FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
In re:                                                        :
                                                              :   Chapter 13
    Stacy J. Garris and Carole E. Garris             :
                                                              :   Case No. 11-36799 (cgm)
                                                              :
                               Debtor(s).      :
                                                              :
--------------------------------------------------------------X

**MEMORANDUM DECISION CONSIDERING OBJECTION TO FEES**

**A P P E A R A N C E S :**

Stacy Garris
Carole Garris
334 Hudson Ave.
Beacon, NY 12508
*Pro se* Debtors

Andrea B. Malin
Genova & Malin, Attorneys
The Hampton Center
1136 Route 9
Wappingers Falls, NY 12590-4332
(845) 298-1600
Appearing in opposition

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

### Introduction

      The Debtors filed a letter *pro se* objecting to attorney fees in this dismissed chapter 13

case. The Debtors claimed that their bankruptcy counsel never remitted to them plan payments

that should have been refunded to them by the trustee upon dismissal. The Court finds that

section 1322(a)(2) applies and excepts section 503(b) administrative claims from funds that

would otherwise return to the Debtors.  The Court will exercise ancillary jurisdiction over counsel's section 503(b) fee request.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.  This is a "core proceeding" under 28 U.S.C. § 157(A), (b)(2)(B) (allowance of claims against the estate), and (b)(2)(K) (determinations of the validity, extent, or priority of liens).

## Background

### I. Case history

Debtors filed this chapter 13 case on June 23, 2011.  Debtors participated in this Court's Loss Mitigation program. No agreement was reached.  *See* Loss Mit. Final Rep. 1, ECF No. 57. This Court terminated Loss Mitigation on March 15, 2013.  *Id.*

On February 25, 2013 the chapter 13 trustee filed a motion to dismiss both Debtors, stating that the Debtors were in arrears on account of their proposed chapter 13 plan payments. Mot. Dismiss 2, ECF No. 56.  The Court granted the motion to dismiss on April 24, 2013.  Ord. Dismiss Case 1, ECF No. 58; *see also* 11 U.S.C. § 1307(c)(4).  At the time the motion to dismiss was granted, the Debtors had remitted $14,906 to the trustee.  Mot. Dismiss 2, ECF No. 56.

On June 22, 2011, apparently contemporaneous with the execution of the petition, the Debtors signed an "assignment of rights" whereby they "assign[ed] and convey[ed] to Genova & Malin any and all funds returned to [them] by the chapter 13 Trustee . . . deducting from said refund any amounts due and owing to Genova & Malin for legal services and reimbursement of expenses performed or incurred on my behalf."  Assgn Rights 1, ECF No. 2.  The assignment

also directs the trustee to return funds to the firm on the Debtors' behalf. *Id.* The balance of funds, after deducting attorney fees, is to be returned to the Debtor. *Id.*

## II. Debtors' letter to the Court objecting to attorney fees

On August 13, 2013 the Debtors filed a brief handwritten letter with the Court, which states in full:

> My husband Stacy and I applied for a ch. 13 bank. a year & a half ago. Our case # was 11-36799. Our attorney was Andrea Malin. We are a bit confused about this process. We paid Andrea $3,500 as a retaining fee (cash). We did not finish the process of a modification and Ms. Malin kept out $14,300 from the trustee (see attached). To date our bills were never paid. Is this the normal process?

Dr's Let. 1, ECF No. 60. Debtors attach a letter from the trustee to Debtors' counsel in which the Debtors were copied. *Id.* at 2. The letter, dated May 3, 2013, states that $14,275.17 will be transmitted via check to Debtors' counsel. *Id.* In other words, the trustee transmitted the money paid into the plan to Debtors' counsel upon dismissal.

## III. Response of counsel to the Debtors' letter.

Debtors' counsel filed a response to the letter. Att'y Resp., ECF No. 63. In the response, counsel states that the Debtors took time to review her retainer agreement and said that they understood that agreement. Att'y Resp. 1, ECF No. 63. They signed the retainer agreement on June 22, 2011. *Id.* They were charged $3,500 as a flat fee for the filing of the case. Att'y Resp. Ex. A, ECF No. 63. Counsel states that Loss Mitigation services were not included in the flat fee. Att'y Resp. 1, ECF No. 63. Indeed, the Federal Rule of Bankruptcy Procedure 2016(b) disclosure of attorney compensation statement includes only the following services in the flat fee:

> A. Analysis of the financial situation and rendering advice and assistance to the debtor in determining whether to file a petition under title 13 of the United States Code.

>B. Preparation and filing of the petition, schedules, statement of financial affairs, and other documents required by the court.
>C. Representation of the debtor at the meeting of creditors.

Att'y Discl. of Comp. 1, ECF No. 1. The disclosure statement did not exclude any fees. *Id.* Counsel also states that Loss Mitigation was unsuccessful due to the Debtors being unable to provide bank statements or pay stubs confirming their stated income. Att'y Resp. 2, ECF No. 63. Counsel's billing records and time sheets reflected an additional $5,196.98 in fees above the flat fee incurred for representation during Loss Mitigation. *Id.*

Counsel states that the money remitted by the trustee was placed in escrow on May 7, 2013, upon receipt of those funds. *Id.* at 3. Counsel states that the firm's ledger indicates that a $9,078.19 check was remitted to Debtors on May 17, 2013. *Id.* The additional fees incurred for Loss Mitigation services were deducted from the refund before the remainder was remitted to the Debtors.[1] *Id.*

On May 20, 2013, allegedly without contacting counsel, the Debtors filed a grievance action with the State of New York. *Id.* The Debtor's stated that the firm was rude, offensive, and took advantage of them. *Id.* Counsel believes that the Debtors did not receive the check that was remitted to them from escrow. *Id.* at 4. To date, the firm's records reflect that the check has not been cashed. *Id.*

In the response, counsel asks the Court to approve her fees. *Id.* The response was served on the chapter 13 trustee, the Debtors, and the New York State Grievance committee; it was not served on any other party. *See* Att'y Resp. Aff. of Serv. 1, ECF No. 63

---

[1] At the hearing held in this matter on August 20, 2013, the Court ordered counsel to remit a $9,078.19 check to the Debtors. The $5,196.98 was ordered into escrow pending determination by this Court.

Page **4** of **17**

**Discussion**

Under section 1326(a)(1), Chapter 13 debtors are required to commence making plan payments to the chapter 13 trustee within 30 days after filing the bankruptcy petition. 11 U.S.C. § 1326(a)(1). The requirement is not contingent upon confirmation of the debtor's plan; the debtor must make payments in the amount stated in the proposed plan. *Id.*

The chapter 13 trustee holds those payments until confirmation of the debtor's plan or denial of confirmation. 11 U.S.C. 1326(a)(2); *In re Parker*, 400 B.R. 55, 60 (Bankr. E.D. Pa. 2009). Debtor's counsel can seek payment through the confirmed chapter 13 plan as an administrative claimant. *See* 11 U.S.C. §§ 1322(a)(2) (stating that plan shall pay priority claims under section 507[2] in full); 507(a)(2) (indicating that section 503 administrative claims are priority claims); 503(b)(2) (allowing an administrative claim for compensation to professionals awarded by the court under section 330(a)); 330(a)(4)(B) (permitting reasonable compensation to be awarded to a chapter 13 debtor's attorney). Where confirmation occurs, the attorney will be paid pursuant to the plan.

A different scenario arises where the attorney is owed money for services performed and no confirmation occurs. The attorney will not be paid through the plan pursuant to section 1322(a)(2), as no confirmation takes place. The attorney must look elsewhere to collect for work performed. It is not surprising that counsel seeks to collect from the money in the hands of the chapter 13 trustee in this case.

---

[2] Unless otherwise noted, all sectional references are to the United State Bankruptcy Code, 11 U.S.C. § 101 – 1532 (2012).

I. **Section 1326(a)(2) governs the disposition of the funds in this case.**

Section 1326(a)(2) provides:

> A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503 (b).

The provision provides an exception to the mandate that funds be paid "to the debtor" for section 503(b) administrative expense claims. Section 503(b) governs administrative expenses[3] and includes "compensation and reimbursement awarded under section 330(a) of this title."

Section 330(a) governs the compensation of officers, allowing the court to allow "reasonable compensation" to professional persons employed by the debtor, as well as actual and necessary expenses. Such approval must come "[a]fter notice to the parties in interest and the United States Trustee and a hearing. . . ." Section 330(a)(4)(B) governs fee applications by debtor's counsel in chapter 13 cases:

> In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

Also relevant to this case is section 349(b), which states "[u]nless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title . . . revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title."

---

[3] Under section 507(a)(2), administrative expenses are entitled to second priority in distribution from estate proceeds.

A. *In re Lewis.*

The interplay between sections 1326(a)(2) and 349(b) was discussed in *In re Lewis*, 346 B.R. 89, 104 (Bankr. E.D. Pa. 2006). In that case, a law firm sought compensation from funds returned by the chapter 13 trustee in two dismissed cases. *Id.* at 92. In one case, the firm submitted a fee application prior to entry of the dismissal order. *Id.* at 94. That application was heard on the same day as the motion to dismiss. *Id.* In the other case, the motion to approve fees was brought two days after the dismissal order was entered. *Id.* at 96.

The court allowed the fees requested in the case where the fee application was made prior to entry of the dismissal order. *Id.* at 103. The court relied on section 349(b) rather than section 1326(a)(2), finding that cause existed to modify the mandate that the funds return to the party in which they were vested prepetition upon dismissal. *Id.* at 103. In contrast to section 349(b), section 1326(a)(2) imposed "a mandatory obligation on the trustee, apparently not subject to modification of the court, to deduct any unpaid administrative expense allowed under section 503(b) . . . ." *Id.* at 104. The key issue before the court was whether section 349(b)(3) or section 1326(a)(2) is the dominant provision when a case is dismissed pre-confirmation. *Id.* at 105. In other words, the question was whether an allowed administrative claimant is entitled to a deduction of its fees as a matter of right under section 1326(a)(2) or must make the additional showing of cause under section 349(b)(3). *Id.*

The court held that the additional showing of cause under section 349 is required. *Id.* at 111. Section 1326(a)(2) consists of three sentences which, if read together, could lead to the conclusion that the third sentence applies only in cases where confirmation is denied and the bankruptcy case is not dismissed. *Id.* Section 1326(a)(2) states in full:

> A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. If a plan is confirmed, the trustee shall

> distribute any such payment in accordance with the plan as soon as is practicable. If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503 (b).

The court noted that the first sentence applies to "confirmation or denial of confirmation," and the second sentence applies where "a plan is confirmed." *Id.* Read together, the third sentence could be read to apply only to the effect of denial of confirmation rather than the effect of dismissal. *Id.* at 106. Section 349(b)(3) would then be the exclusive provision governing the disposition of estate property upon dismissal. *Id.*

This interpretation creates several problems. *Id.* If Congress meant the third sentence to apply only where there is a denial of confirmation, it could have used the phrase "denial of confirmation" as was used in the first sentence. *Id.* Instead, the third sentence refers to cases where a plan is "not confirmed." *Id.*

The court in *Lewis* noted that the terms of section 349(b)(3) are difficult to apply to post-petition plan payments. *Lewis*, 346 B.R. at 107. Section 349(a)(3) returns property to the party in which it was vested prepetition. *Id.* Postpetition plan payments did not exist at the beginning of the case. *Id.* Section 1326(a)(2) potentially resolves this question by specifying what happens to postpetition funds; section 349 would apply to all other forms of property. *Id.*

The court found significant practical problems in utilizing section 1326(a)(2). *Id.* at 108. Section 1326(a)(2) only permits deduction of "allowed" section 503(b) claims. *Id.* Thus, the trustee is instructed to deduct only fees that were previously allowed by the court. *Id.* Such an interpretation encourages earlier and more frequent fee applications. *Id.* at 109. The court found this result undesirable as it "would add complexity to the chapter 13 process and compel the expenditure of an inordinate amount of attorney and judicial resources on the fee allowance

Page **8** of **17**

process." *Id.* The court also found that early fee applications would inhibit consideration of the standards of "reasonableness, benefit and necessity." *Id.* at 108. As one court previously noted:

> When a chapter 13 plan is confirmed, there is an obvious and demonstrated benefit to the debtor and, presumably, counsel's services contributed to completion of the case. In most cases, additional proof will not be needed. But when cases are dismissed prior to plan confirmation, Counsel must provide an explanation in the fee application and evidence that counsel provided substantial, valuable professional services including investigation, evaluation, and counseling that was intended and designed to achieve an objective appropriate for chapter 13 cases.

*Id.* (quoting *In re Phillips,* 291 B.R. 72, 82 (Bankr. S.D. Tex. 2003)). The court noted that the efforts of counsel should be focused on avoiding dismissal in failing chapter 13 cases, not on fee applications. *Lewis*, 346 B.R. at 110.

According to the court, the text of the statute did not mandate application of section 1326(a)(2) to dismissed cases. *Id.* As such, the court concluded that "the best result is achieved by making use of the flexibility afforded to the court through the 'for cause' provision in § 349." *Id.* at 111. This would afford protection to administrative claimants while preventing wasteful use of time and resources by the court and practitioners. *Id.* at 110-11.

Application of section 349 created two different results in the two cases before the court. Where the law firm brought a motion to seek professional fees prior to entry of the dismissal order, the court found that cause existed to award the funds to the firm. *Id.* at 111-12. The court required the firm to notify other parties in interest of the availability of the funds. *Id.* at 112. This requirement was imposed in fairness to other interested parties who were not in the same position to anticipate the dismissal of the case and subsequent availability of the funds. *Id.*

The court denied the fees where the firm filed its motion after the dismissal order was entered. *Id.* at 113. The court found a lack of subject matter jurisdiction over the fee application where the dismissal order was entered and did not retain jurisdiction over fees. *Id.* at 113 (citing

*In re Ragland,* 2006 WL 1997416 (Bankr. E.D. Pa. May 25, 2006).  The court found that the motion to approve fees filed after dismissal constituted a motion to reconsider under Federal Rule of Bankruptcy Procedure 9024 and Federal Rule of Civil Procedure 60.  *Lewis*, 346 B.R. at 114.  The court found it inappropriate to grant the relief where there was a lack of justification for waiting to make the motion until after entry of the dismissal order.  *Id.*

   B.  <u>Other relevant cases.</u>

In *In re Clements*, ___ B.R. ___, 2013 WL 3270422 (Bankr. E.D. Pa. June 28, 2013) the court applied section 348(f) rather than section 1326(a)(2) in a chapter 13 case that was voluntarily converted to chapter 7 prior to confirmation.  *Id.* at *2; *see also* 11 U.S.C. § 1307(a).  In that case, the debtor agreed to pay counsel $389 prior to filing and $2,500 would be paid to the law firm through the chapter 13 plan.  *Clements*, 2013 WL 3270422, at *2.  The chapter 13 trustee retained the $1,750 paid by the debtor into the plan prior to conversion.  *Id.*  The firm asserted that the funds were payable to it as compensation.  *Id.*

The court began its analysis with section 348(f)(1)(A), which provides that "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion."  *Id.*  Upon conversion of the case to chapter 7, estate property is limited under section 348(f)(1)(A) to property of the estate as of the bankruptcy filing.  *Id.*  Chapter 13 plan payments made out of postpetition earnings do not flow into the chapter 7 estate on conversion.  *Id.* at *4.  If the payments are not estate assets, they belong to the debtor.  *Id.*

The firm argued that section 1326(a)(2) mandated that the funds be surcharged as administrative expenses.  *Id.*  The court found that the term "not confirmed" in the third sentence of section 1326(a)(2) meant "denial of confirmation" in accordance with the first sentence.  *Id.* at

*6. It made more sense to the court to interpret the third sentence as closing the circle of possible outcomes set forth in the first sentence. *Id.* at *7. The sole governing provision in the court's view was section 348(f)(1), which mandated return of the funds to the debtor. *Id.* at *9.

The court in *In re Jordan*, 2000 WL 33712290 (Bankr. D. Idaho March 24, 2000) applied section 1326(a)(2) to a factual situation similar to this case. Counsel filed an application for fees immediately after entry of a dismissal order, seeking funds from the chapter 13 trustee. *Id.* at *2. The court stated that "[s]ince the plan in this chapter 13 case was never confirmed, § 1326(a)(2) applies." The court noted that debtors are inherently adverse to a request of counsel to receive funds under section 1326(a)(2), as the deduction comes directly out of money that otherwise would belong to the debtor. *Id.* at *2-3. In some cases, debtors do not contest the application. *Id.* at *3. It is preferable for counsel to consult the debtor before making the fee application to "determine if there are any unresolved issues." *Id.* The court focused most of its inquiry into the reasonableness of the attorney fees, ultimately reducing the request. *Id.* at *11.

In *In re Harris*, 258 B.R. 8 (Bankr. D. Idaho 2000) the debtor sent a letter post-dismissal to the chapter 13 trustee demanding that the trustee pay $917 to debtor's counsel. *Id.* at 10. After refusal by the trustee, debtor's counsel filed a motion with the court. *Id.* The attorney asserted a state law lien over the funds. *Id.* The court held that there was no lien under Idaho law. *Id.* at *14. It also held that the debtor's directions that the funds should belong to the attorney did not abdicate the trustee's duty under section 1326(a)(2) to return the funds to the debtor. *Id.* Counsel, according to the court, "should apply for allowance of his fees in the manner prescribed by the Code." *Id.* at *14.

C. This Court holds that section 1326(a)(2) applies.

The Court finds that the third sentence of section 1326(a)(2) applies to this dismissed case. When statutory language is plain, it must be interpreted in accordance with its terms. *Jimenez v. Quarterman,* 555 U.S. 113, 118 (2009) (citations omitted). Words are given "their ordinary, contemporary, common meaning, absent an indication Congress intended them to bear some different import." *U.S. v. Joshua*, 607 F.3d 379, 384 (4th Cir. 2010) (quotation omitted). "When interpreting a statute, we 'must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.'" *U.S. v. DiCristina*, ___ F.3d ___, 2013 WL 3984970, at *2 (2d Cir. August 6, 2013) (quotation omitted).

"Not confirmed" means, in plain language, that no confirmation occurs. There is no ambiguity in the phrase itself. "It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *Lewis*, 346 B.R. at 106 (quoting *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 537 (1994)).

There is no reason to conclude that the change in language from "denial of confirmation" in the first sentence to "not confirmed" in the second was inadvertent. Denial of confirmation and dismissal of the case are tied together within the Bankruptcy Code. Under section 1307(c)(5), denial of confirmation is cause to dismiss a chapter 13 case. Failure to timely file a plan is also cause to dismiss a case under section 1307(c)(3).

In many unsuccessful cases, dismissal of the case is the direct result of the court's denial of confirmation. The distinction between the two does not make a difference to the outcome in these cases. Under section 1325(a)(6), the plan cannot be confirmed unless the debtor filed the

petition in good faith. Courts also hold that a lack of good faith is cause to dismiss under section 1307(c). *In re Armstrong*, 409 B.R. 629, 633 (Bankr. E.D.N.Y. 2009); *In re Dahlgreen*, 418 B.R. 852, 855 (Bankr. D. N.J. 2009). To achieve confirmation, the debtor must be current on all postpetition domestic support obligations. 11 U.S.C. § 1325(a)(8). Failure to make these domestic support payments is cause to dismiss. 11 U.S.C. § 1307(c)(11). The debtor must be able to make plan payments before the plan can be confirmed. 11 U.S.C. § 1325(a)(6). Failure to make payments prior to confirmation is also cause to dismiss. 11 U.S.C. § 1307(c)(4). If an objection to confirmation is returnable before a motion to dismiss, the objection may be granted first. In other cases, the motion to dismiss may be granted first. The language in the third paragraph of section 1326(a)(2) was likely broadened to encompass dismissal as well as denial of confirmation, as the two often occur together.

This reading of section 1326(a)(2) is consistent with section 349(b)(3). Plan payments typically come from postpetition earnings; there is no party vested in the property as of the petition date. *See Lewis¸* 346 B.R. at 107. Section 1326(a)(2) supplements section 349(b)(3) in dismissed cases to deal with this different type of property.

**II. The Court cannot compel payment of the funds to counsel based on the assignment agreement.**

Having found that section 1326(a)(2) applies, the Court cannot compel payment of the funds to Debtors' counsel through operation of the assignment signed by the Debtors. The issue was confronted in the *Harris* case. 258 B.R. 8, 14 (Bankr. D. Idaho 2000). In that case, the debtor instructed the trustee to turn funds over to counsel. *Id.* Counsel argued that debtor's entitlement to the funds meant that the debtor could direct the trustee to pay them to other persons. *Id.* The court declined to order the trustee to respond to payment directions that were inconsistent with section 1326(a)(2). *Id.* If the debtor wanted counsel to be paid, the debtor

could pay counsel upon receipt of the funds. *Id.* Alternatively, counsel could have filed a fee application and obtained a section 503(b) claim. *Id.* Since this had not occurred, the trustee was obligated to pay the money to the debtor. *Id.*

The Court agrees with the reasoning in *Harris*. There is no provision in the Bankruptcy Code that allows the Court to direct the trustee to pay this money to anyone other than the Debtors. There is no Bankruptcy Code provision that allows the Court to enforce an agreement, like the assignment between Debtor and counsel in this case, which directs the trustee to pay funds to Debtor's counsel.

This is not the only problem with using an assignment agreement in place of obtaining an allowed section 503(b) claim. It is unclear whether an attorney for a debtor is entitled to collect fees without court approval—even here, in a dismissed case where there is a contractual arrangement between the debtor and the debtor's attorney. *See In re 5900 Ass'c., L.L.C.*, 326 B.R. 402, 410 (E.D. Mich. 2005) (affirming a bankruptcy court's holding that "11 U.S.C. § 330(a) establishes the exclusive means by which a claim for professional fees relating to a bankruptcy case is allowed and a debtor is simply not liable for professional fees for services performed ... [that] have not been allowed by the bankruptcy court."). The re-vestment of estate property with a debtor upon dismissal of a bankruptcy case "does not render any private contract for attorney fees incurred during the case enforceable without judicial review under § 330." *Id.* at 409. The Revision Notes to 11 U.S.C. § 330 underscore that "fees are not a matter for private agreement" in bankruptcy cases due to the public-interest concerns inherent in the award of such fees." *Id.* In other words, a fee that is not enforceable under the Bankruptcy Code is not transformed, by virtue of a private agreement, into an enforceable one after a case is dismissed, even if such an agreement would be otherwise enforceable under state law. *Id.* (citing *In re*

*Inslaw, Inc.*, 106 B.R. 331, 333–34 (Bankr. D. D.C. 1989); *see also In re Jankowski*, 382 B.R. 533, 541 (Bankr. M.D. Fla. 2007) ("[A] Bankruptcy Court is obliged to review all aspects of a professional's claim for compensation, even after the dismissal of a case."); *In re Quaker Distributors, Inc.*, 189 B.R. 63, 68 (Bankr. E.D. Pa. 1995) ("[T]here is no reason to conclude that dismissal of a case could or should eliminate bankruptcy court review of a debtor's transactions with its professionals."). "The oversight of the bankruptcy court … must not end upon the mere dismissal of a case, lest overreaching counsel could frustrate the requisite court review by the simple medium of encouraging the debtor to seek dismissal." *See In re Quaker*, 189 B.R. at 68).

Other cases suggest that there is a state court cause of action for fees that are not approved by the bankruptcy court. *See, e.g.*, *In re Ragland*, 2006 WL 1997416, at *9 (Bankr. E.D. Pa. May 25, 2006) ("[I]t is clear that this law firm could proceed in state court against its former clients to seek recovery of its fees for bankruptcy services rendered in this forum."); *In re Kent Funding Corp.*, 290 B.R. 471, 477–78 (Bankr. E.D.N.Y. 2003) (bankruptcy court declined to vacate dismissal order to determine post-dismissal fee application where the issue could be adjudicated in state court).

The better practice is to file fee applications with this Court for the determination of fees, prior to seeking collection of those fees by means permitted in state court.

### III. Counsel can obtain an allowed administrative expense under section 503(b) despite dismissal of the case.

The Court continues to have jurisdiction over fee requests despite dismissal of the case. *In re Parlex Associates, Inc.*, 435 B.R. 195, 208 (Bankr. S.D.N.Y. 2010). "The court can approve the request for compensation and reimbursement of expenses even though the case was previously dismissed." *In re Fox,* 140 B.R. 761, 764 (Bankr. D. S.D. 1992). The allowance of fees is a core matter under 28 U.S.C. § 1334(b). *In re Brown*, 371 B.R. 486, 494 (Bankr. N.D.

Okla. 2007).  The *Brown* court held that "[t]he Court's jurisdiction to review such fees is not dependent on whether the status of the case stands as open, closed, pending, or dismissed."  *Id.*  The bankruptcy court has the discretion "to dispose of ancillary matters such as an application for an award of attorneys fees for services rendered in connection with the underlying action."  *Kent Funding*, 290 B.R. at 478 (quoting *Tsafaroff v. Taylor (In re Taylor),* 884 F.2d 478, 481 (9th Cir. 1989)).

In this case, the Court will exercise its ancillary jurisdiction to hear a motion for approval of fees.  The *Lewis* court expressed concern that fee applications filed in anticipation of dismissal orders would complicate the chapter 13 process.  346 B.R. at 110-11.  Allowing fee applications shortly after the order to dismiss is entered alleviates the concerns outlines by the court in *Lewis*.  If the fee application is filed post-dismissal, attorneys can still diligently represent clients until the dismissal order is entered.  The Court can also consider the reasonableness of fees in light of the results in the case.

### IV. Counsel must notice all parties in interest before the Court will grant fees under section 330.

In its response to the Debtors' letter, counsel asked the Court to grant $5,196.98 in fees.  Federal Rule of Bankruptcy Procedure 2002(a)(6) requires 21 days' notice on all creditors for hearings "on any entity's request for compensation or reimbursement of expenses if the request exceeds $1,000."  Counsel's lettered response was not served upon all creditors.

## Conclusion

Counsel will be given the opportunity to file a fee application. The Debtors will have the opportunity to contest the reasonableness of the fees if they chose to do so.

Dated: Poughkeepsie, New York
      September 5, 2013

                              /s/ Cecelia G. Morris
                              CECELIA G. MORRIS
                              CHIEF UNITED STATES BANKRUPTCY JUDGE